# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| KENNETH RAY HENDRICKSON, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| *versus* | § | CIVIL ACTION NO. 5:11-927 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION

Plaintiff Kenneth Ray Hendrickson ("Hendrickson") brings this action under 42 U.S.C. § 405(g) for review of a decision denying his application for disability-based benefits under the Social Security Act. Complying with General Order # 18, the parties join issues through competing briefs.[1]

## I. Background

Hendrickson applied for disability insurance ("DIB") and supplemental security income ("SSI") benefits claiming disability due to *depression* and *anxiety*. (T. 106-13, 136).[2] His applications, filed on June 25, 2007, alleged that disability commenced on April 28, 2007. *Id.* After being denied benefits initially

---

[1]    General Order #18 is dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders).  (Dkt. No. 3).

[2]    "T." followed by a number refers to the page of the administrative record.  (Dkt. No. 9).

(T. 66-67), Hendrickson requested a hearing before an administrative law judge ("ALJ"). (T. 76).

ALJ Thomas John S. Pope ("ALJ Pope") conducted a video evidentiary hearing on September 10, 2009. (T. 19, 29-65). Hendrickson was represented by counsel, Jason Mintz, Esq., at the hearing. (T. 19, 29, 31). Hendrickson and an impartial vocational expert gave testimony.[3] ALJ Pope received additional evidence consisting of Hendrickson's medical records, a psychiatric evaluation of a state agency psychiatric consultative examiner, Kristen Barry, Ph.D., and a psychiatric review report and mental residual functional capacity assessment of a state agency psychology medical consultant, E. Kamin, Ph.D.

When ALJ Pope denied Hendrickson's applications (T. 19-28), Hendrickson appealed to the Appeals Council of the Social Security Administration's Office of Hearings and Appeals. (T. 13-14). On June 28, 2011, the Appeals Council denied Hendrickson's request to review. (T. 3-5). This rendered ALJ Pope's opinion the final decision. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

Represented by new counsel, Howard D. Olinsky, Esq., Hendrickson timely instituted this case on August 4, 2011. (Dkt. No. 1).

## II. Preliminary Discussion

An initial discussion of the Social Security benefit programs at issue and the administrative decision-making process (including certain terms of art) will

---

[3] ALJ Pope presided over the hearing from Chicago, Illinois. Hendrickson appeared and testified through interactive video in Syracuse, New York. The impartial vocational expert, Edward Pagella, appeared by telephone. (T. 19).

aid comprehension of Hendrickson's underlying claim, ALJ Pope's decision and Hendrickson's challenges thereto.

A.    *Eligibility for Benefits*

*Disability Insurance benefits*, authorized by Title II of the Social Security Act and funded by social security taxes, provide income to insured individuals forced into involuntary, premature retirement by reason of disability. *Supplemental Security Income* benefits, authorized by Title XVI of the Social Security Act and funded by general tax revenues, provide an additional resource to assure that disabled individuals' income does not fall below the poverty line.

Maximum benefits available under SSI are considerably less than under DIB. Here, ALJ Pope found that Hendrickson meets the insurance requirements of the DIB program. The practical effect of that finding makes Hendrickson's SSI application superfluous since Hendrickson, if found to be disabled, obviously would elect the higher benefit available under DIB.

The Social Security Act defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 42 U.S.C. §§ 423(d)(1)(A)*,* 1382c(a)(3).

B.    *Sequential Evaluation Procedure*

The law requires *individualized* determinations. *See Heckler v. Campbell*, 461 U.S. 458, 467 (1983). Hence, Commissioner Astrue generally must make both medical and vocational assessments in every case. To satisfy this requirement, the Commissioner utilizes a five-step, sequential evaluation procedure for adjudicating disability-based claims. *See* 20 C.F.R.

§§ 404.1520(a), 416.920.[4] This model is "sequential" in the sense that when a decision can be made at an early step, remaining steps are not considered. *See* 20 C.F.R. §§ 404.1520, 416.920. It enjoys judicial approval as a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler*, 461 U.S. at 461) (use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations")).

Claimants bear the burden to prove their disability under the first four steps. *DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998). When they do, a *prima facie* case of disability has been proven. *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). The burden then shifts to the Commissioner in Step 5 to show "that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also DeChirico*, 134

---

[4] In this circuit, the Commissioner's five-step sequential procedure is described as follows:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment [that meets or equals a] listed [impairment] in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1520, 416.920)).

F.3d at 1180; *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); 20 C.F.R. § 416.966.

Specialized rules – some imposed externally by courts – govern the Commissioner's applications of these five steps. Those particularly pertinent to Hendrickson's case are described in the remainder of this section:

1. <u>Step 2 Severity Determination</u>

In the Commissioner's view, "[a] 'severe' impairment is one that significantly limits an individual's physical or mental ability to do 'basic work activities.'" *Meadors v. Astrue*, 370 Fed. App'x 179, 182 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *see also* 20 C.F.R. § 416.921(b) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities"). The phrase "significantly limits," however, is not tantamount to an ultimate determination of disability. In this circuit, a Step 2 severity inquiry serves only to "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' . . . [with] . . .'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen*, 482 U.S. at 154 n. 12).

When mental impairments are present, determining severity thereof is a complex undertaking. The Commissioner has promulgated additional regulations that require application of a "special technique" at the second (and third) steps of the five-step framework. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citing 20 C.F.R. § 404.1520a). This technique requires an initial

determination of whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). If so, the reviewing authority must then rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c), § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) <u>concentration, persistence, or pace</u> (underscored because of relevance to instant case); and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). When the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, the claimant's mental impairment is not "severe." 20 C.F.R. § 404.1520a(d)(1).[5] Conversely, when a mental impairment is severe, evaluation proceeds to Step 3 to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. 20 C.F.R. § 404.1520a(d)(2)(3).

## 2. Step 4 Residual Functional Capacity Determination

When making a Step 4 finding (as to whether a severely impaired claimant can perform past relevant work), an ALJ must first assess and articulate that claimant's "residual functional capacity" ("RFC"), *i.e.*, what that claimant can still do in a work setting (8 hours a day, 5 days a week, or equivalent scheduled) despite physical and/or mental limitations caused by impairments and any related symptoms, such as pain. *See* 20 C.F.R. § 404.1545, 416.945(a); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC). Administrative

---

[5]    "[A]pplication of the special technique [must] be documented." *Petrie v. Astrue*, 412 Fed. App'x 401, 408 (2d Cir. 2011)(citing 20 C.F.R. § 404.1520a(e)). "Generally, a medical or psychological consultant will complete a standard document, known as a 'Psychiatric Review Technique Form' ("PRTF")." *Id.* "Pursuant to the regulations, the ALJ's written decision must 'reflect application of the technique, and ... include a specific finding as to the degree of limitation in each of the [four] functional areas."'" *Id.*(quoting 20 C.F.R. § 404.1520a(e)(2)).

law judges thus decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis. *See* SSR 96-8p, TITLE II AND XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, 61 Fed. Reg. 34474, 1996 WL 374184, at *4 (SSA July 2, 1996).

When *physical* impairments are at issue, the Commissioner's regulation and an internal policy ruling (a) identify various ordinary physical functions to be considered in context of an ordinary work schedule, (b) require function-by-function assessments of those activities, and (c) dictate that the ultimate RFC determination account for limitations imposed by both severe and non-severe impairments. *See* 20 C.F.R. §§ 404.1545(a)(2), 404.1545(b), 416.945(a)(2), 416.945(b); SSR 96-8p, 1996 WL 374184, at **5, 7.

When *mental* impairments are in the picture, the RFC assessment ("mental RFC") involves an even more detailed analyses of claimants' functional limitations than were undertaken at Step 2. Mental RFC consists of four broad categories (*i.e.*, understanding and memory; sustained concentration and persistence; social interaction; and adaptation) with a total of twenty subparts that are each reviewed and rated (*i.e.*, "not significantly limited"; "moderately limited"; "markedly limited"; "no evidence of limitation in this category"; and "not ratable on available evidence"). (T. 389-391). Ultimately, "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment." SSR 85-15, THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, 1985 WL 56857, at *5-6 (SSA 1985).

3.    Step 5 Evidentiary Burden When Nonexertional Impairments Exist

At Step 5, the Commissioner can satisfy his burden to show that a claimant can still do work existing in the national economy by eliciting or consulting several extrinsic sources of relevant evidence.[6]    In limited circumstances, moreover, the Commissioner may take administrative notice of disability *vel non* by adopting findings published in "*Medical-Vocational Guidelines,*" commonly called *"the grids." See Roma v. Astrue*, 468 Fed. App'x 16, 20-21 (2d Cir. 2012); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)*; see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2.  When only exertional impairments[7] are in play, and when an ALJ's findings of residual functional capacity, age, education, and previous work experience coincide with grids parameters, the Commissioner may directly apply the grids to determine whether work exists in the national economy which claimants can perform.  *See Martin v. Astrue,* 337 Fed. App'x 87, 91 (2d Cir. 2009); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2; *see also Thompson v. Barnhart*, 75 Fed. App'x 842, 844 (2d Cir. 2003) (Commissioner can

---

[6]    Generally, the Commissioner elicits or consults two principal sources of evidence relevant to whether claimants can perform alternative, available work.  First, witnesses qualified as "Vocational Experts" may testify as to whether jobs exist for a person with the claimant's precise abilities.  *See* 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also* SSR 00-4p, POLICY INTERPRETATION RULING: TITLES II AND XVI: USE OF VOCATIONAL EXPERT AND VOCATIONAL SPECIALIST EVIDENCE, AND OTHER RELIABLE OCCUPATIONAL INFORMATION IN DISABILITY DECISIONS, 2000 WL 1898704, at *1-2 (SSA Dec. 4, 2000).  Second, a United States Department of Labor publication titled *Dictionary of Occupational Titles* ("DOT") can assist in  determining when a claimant's residual work skills can be used in other work and the specific occupations in which they can be used.  *See* 20 C.F.R. §§ 404.1560(d)(1), 416.966(d)(1); *see also* SSR 00-4p, 2000 WL 1898704, at *1-2.

[7]    "An exertional impairment is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet . . . strength demands of jobs (*i.e.*, sitting, standing, walking, lifting, carrying, pushing, and pulling)."  *Bogardus-Fry v. Astrue*, No. 7:11-CV-883 (MAD), 2012 WL 3779132, at *15 n. 14 (N.D.N.Y. Aug. 31, 2012) (citing 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *Rodriguez v. Apfel*, No. 96 Civ. 8330(JGK), 1998 WL 150981, at *10, n. 12 (S.D.N.Y. Mar. 31, 1998)).

meet Step 5 burden "by resorting to the applicable medical-vocational guidelines (the grids")."[8]

But, when claimants also suffer from nonexertional impairments,[9] direct application of the grids to determine disability is not permitted. The Commissioner nonetheless permits administrative law judges to consult them as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by . . . nonexertional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). SSR 85-15 addresses this "framework" analysis, and directs that when evaluating nonexertional impairments, an administrative law judge should first consult the grids, along with consideration of the claimant's RFC and vocational factors, to determine the extent of impairment caused by *exertional* limitations. *See* SSR 85-15, 1985 WL 56857, at *3. The administrative judge should next determine how much that claimant's "occupational base," (the entire exertional span from sedentary work through heavy work), is *further reduced* by effects of *nonexertional* impairments. *See id.*

---

[8]    The grids are a matrix of general findings – established by rule – as to whether work exists in the national economy that a person can perform. "The grids take into account a claimant's RFC, as well as [his] age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). Ultimately, the grids yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996) (citing 20 C.F.R. § 404.1567(a)).

[9]    "Nonexertional limitations" are "limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect[ing] only your ability to meet . . . demands of jobs other than . . . strength demands . . .." *See* 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1). A nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling. Environmental restrictions (*e.g.*, difficulty tolerating some physical features of certain work settings, such as dust and fumes) are also considered to be nonexertional limitations. *See* 20 C.F.R. §§ 404.1569a(c)(1)(v), 416.969a(c)(1)(v).

The net effect is that when both exertional and nonexertional impairments are present, an administrative law judge theoretically can find a claimant *disabled* when the grids direct such a finding solely on the basis of severity of exertional impairments. But, when exertional impairments alone generate a grids finding of *not disabled*, an administrative judge then must determine (usually from other evidence) how much nonexertional impairments further diminish that claimant's occupational base. Only when a meaningful occupational base remains can an administrative judge then deny a claim using the grids as a framework. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (a claimant's work capacity is "significantly diminished" if there is an additional loss of work capacity that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity).

### III. The Commissioner's Decision

ALJ Pope utilized the sequential evaluation procedure described earlier. (T. 19-28). Findings generally favorable to Hendrickson at the first four steps established a *prima facie* case of disability. At Step 5, however, ALJ Pope concluded that Hendrickson "has not been under a disability" and his claim was denied. (T. 27-28).

ALJ Pope's complete findings and conclusions appear on pages 21 – 27 of the administrative transcript contained in the record before the court. (Dkt. No. 9). For present purposes, however, it is necessary to identify and then amplify certain findings at sequential Steps 2, 4 and 5:

| Step 2 | Hendrickson has severe impairments consisting of depression, anxiety, and substance abuse. (T. 21-23). |
|---|---|
| Step 4 | (a) Hendrickson has *physical capacity* to perform a full range of work at all exertional levels; (b) his *mental capacity* for work at all levels is diminished by depression, anxiety and substance abuse; and, consequently, (c) his overall *residual functional capacity* is limited to unskilled work that does not involve working closely with others. (T. 23-26). |
| Step 5 | (a) The grids (Medical-Vocational Rule 204.00) indicate "not disabled" with reference to Hendrickson's exertional impairments (none); (b) Hendrickson's nonexertional limitations, however, erode the occupational base of unskilled work at all exertional levels by 70%; but (c) many remaining jobs exist in the national economy for individuals with Hendrickson's residual functional capacity. (T. 27). |

## A.    *Step 4 Residual Functional Capacity Assessment*

When making his Step 4 findings summarized above, ALJ Pope gave "great weight" to the opinions and analyses of the two state agency experts identified earlier. Dr. Barry examined Hendrickson. Dr. Kamin conducted an "extensive review of [Hendrickson's] medical records and objective tests from all the claimant's treatment providers." (T. 27). Their respective evaluations relating to concentration, persistence and pace chronicled that Hendrickson:

·    has a difficult time handling stress and making appropriate decisions (T. 373, 391);

·    has a "guarded" prognosis (T. 374);

·    is moderately limited in ability to perform activities with a schedule, maintain regular attendance and be punctual within customary tolerances (T. 389);

·    is moderately limited in ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (T. 390);

- is moderately limited in ability to respond appropriately to changes in the work setting (T. 390);

- is moderately limited in ability to work in coordination with or proximity to others without being distracted by them (T. 390); and

- is moderately limited in his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (T. 390).

Dr. Kamin also concluded from his overall review of Hendrickson's medical records that Hendrickson has mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in concentration, persistence or pace, and one or two repeated episodes of deterioration (each of extended duration). (T. 385).

In ALJ Pope's view, this information indicates that Hendrickson's capacity for work-related activity is limited to performing unskilled work and only when not required to work closely with others. ALJ Pope explained:

> "[T]he residual functional capacity finding by the undersigned accommodates some difficulties in the claimant's ability to concentrate and focus and his anxiety by providing for unskilled work which does not require working closely with other people. *The unskilled work will allow for a lower level of concentration and focus, and the limited contact with others should lessen the claimant's anxiety level and accordingly reduce the risk of panic attacks.*"

(T. 25) (emphasis added).

B.    *Step 5 Finding Regarding Ability to Perform Alternative Work*

Hendrickson cannot perform his past relevant work under the RFC rating ascribed to him above. Consequently, the sequential analysis proceeded to Step 5 where the burden rests with the Commissioner to show that Hendrickson can still perform alternative, available work. There, ALJ Pope could not apply the grids (Medical-Vocational Guidelines) directly because Hendrickson has

nonexertional impairments. Consequently, ALJ Pope properly elicited extrinsic evidence from an impartial vocational expert, Edward Pagella, CRC, LCPC ("VE Pagella"). (T. 58-64, 101).

As is customary in these type proceedings, VE Pagella provided expert opinions in response to hypothetical questions. (T. 58-64). ALJ Pope asked VE Pagella to assume that a person of Hendrickson's age, education and experience has limitations requiring that he engage only in unskilled work that does not require working closely with others. (T. 59-60). Based on those assumptions, VE Pagella opined that such a person's occupational base will be reduced by 70%. (T. 60-61). VE Pagella also opined that thousands of jobs in the light and sedentary categories exist in the remaining 30% of the occupational base. *Id.* He identified several representative occupations within this remaining occupational base. *Id.*

In sum, VE Pagella provided testimony concerning (a) extent of erosion of Hendrickson's occupational base caused by limitations posed in the hypothetical question posed and (b) availability of a meaningful remaining occupational base for a person with such limitations. Given this evidence, ALJ Pope concluded that Hendrickson is not disabled because there are jobs that he can perform despite his limitations. (T. 27).

## IV. Alleged Errors

Hendrickson claims that ALJ Pope committed multiple errors in his application of sequential Steps 4 and 5. Specifically, Hendrickson contends:

- The ALJ failed to develop the record by failing to obtain opinions from Plaintiff's treating physicians.
- The ALJ failed to obtain opinions from Plaintiff's social workers, nurse, and counselors.

- The ALJ's residual functional capacity finding is not supported by substantial evidence and is the product of legal error.

- The ALJ failed to apply appropriate legal standards in assessing Plaintiff's credibility.

- The ALJ's Step 5 determination is unsupported by substantial evidence and is the product of legal error.

(Dkt. No. 12, pp. 1, 8-24).

In response, the Commissioner maintains that ALJ Pope properly evaluated his RFC assessment with substantial evidence at Step 4, sufficiently developed the record of Hendrickson's impairments, and correctly found that Hendrickson could perform other work existing in significant numbers in the national economy at Step 5. (Dkt. No. 14, pp. 15-25).

## V.  Judicial Review

The court's limited role is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, ___U.S.___, 130 S. Ct. 1503 (2010); *Berry*, 675 F.2d at 467; *see also* 42 U.S.C. § 405(g). When proper principles of law were applied, and when the Commissioner's decision is supported by substantial evidence,[10] the Commissioner's findings are conclusive and must be affirmed. *Richardson v.*

---

[10]    "Substantial evidence" is a term of art. It means less than a "preponderance" (usual standard in civil cases), but "more than a mere scintilla," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004). Stated another way, to be "substantial," evidence need only be "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.*, 306 U.S. 262, 299-300 (1939), *cited in* Harvey L. McCormick, Social Security Claims and Procedures § 672 (4th ed. 1991).

*Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

## VI.   Discussion and Analysis

Hendrickson's proffered errors regarding inadequate development of the record and a flawed credibility determination need not be addressed on their merits because a necessary and proper disposition reveals itself by focusing initially on points arguing that (a) correct principles of law were not applied to the Step 4 RFC finding and (b) substantial evidence does not support the Step 5 finding that Hendrickson can still perform alternative, available work. These two points, while analytically distinct, are closely entwined.

*A.     Failure to Apply Correct Principles of Law at Step 4*

A legally-correct RFC determination must account for all of a claimant's limitations imposed by both severe and non-severe impairments. *See* discussion in Section II.*B*.2, *supra*. ALJ Pope, giving great weight to the state agency experts' findings and opinions, found Hendrickson's capacity to perform a full range of work at all exertional levels to be limited only to the extent that such work must be (a) unskilled and (b) not involve working closely with others. (T. 23, 26). This RFC assessment clearly accounts for the state agency experts' determinations that Hendrickson has moderate limitations in working in coordination with or proximity to others, and getting along with coworkers or peers without distracting them or exhibiting behavioral extremes. (T. 25-26). It does not, however, reckon the remaining limitations found by Dr. Barry and Dr. Kamin unless those limitations are subsumed in a generic, catch-all limitation for "unskilled work."

ALJ Pope's written decision is thoughtful, considerate and generally meticulous.[11] Hendrickson undisputedly has long-standing and severe mental limitations,[12] and ALJ Pope obviously intended to factor them into his residual functional capacity analysis. His unskilled-work limitation is problematic, however, if he intended it to account for all of Hendrickson's other mental impairments.

First, it is not *self-evident* that a person with limited ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances will function more acceptably when assigned only unskilled tasks. Second, the Commissioner's *official definition* of unskilled work does not support such premise, nor does it indicate that unskilled work

---

[11] ALJ Pope acknowledged that SSR 96-8p requires that the mental residual functional capacity assessment used at steps 4 and 5 requires a more detailed assessment by itemizing the various functions contained in the broad categories found in paragraph B and paragraph C of the adult mental disorders listing in 12.00 of the Listing impairments. (T. 22-23).

[12] Treatment notes and a multitude of Global Assessment of Functioning ("GAF") scores document Hendrickson's serious mental limitations. "The GAF is a scale promulgated by the American Psychiatric Association to assist 'in tracking the clinical progress of individuals [with psychological problems] in global terms.'" *Kohler*, 546 F.3d at 262 n.1 (citing *Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000)). GAF "ranks psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Pollard v. Halter*, 377 F.3d 183, 186 (2d Cir. 2004).

Hendrickson has been diagnosed with several GAF ratings, ranging in June 2007 from 20 (GAF score 11-20 indicates an individual is in "[s]ome danger of hurting self or others . . . or occasionally fails to maintain minimal personal hygiene . . . or gross impairment in communication") (T. 251-52) to a GAF of 35 (GAF score 31-40 indicates an individual has "[s]ome impairment in reality testing or communication . . . or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood")(T. 233). *See Diagnostic and Statistical Manual of Mental Disorders* ("*DSM-IV-TR*") 34 (4th ed. 2000). In July 2007, he was diagnosed with a GAF of 30 (T. 278, 299, 300). *See id.* In January 2008, his GAF was rated at 37 (T. 397) and, later, at 42 (GAF score 41-50 indicates an individual has "[s]erious symptoms . . . or any serious impairment in social, occupational, or school functioning")(T. 402). *See id.* In August 2009, Hendrickson's GAF was scored at 50. *See id.*

Treatment notes also reflect that Hendrickson's episodes are triggered by major stresses. (T. 427).

ameliorates stress, or better enables a worker to complete a normal workday and workweek without interruptions from psychologically-based symptoms, or to work at a consistent pace, or to respond appropriately to changes in the work setting.[13]   Third, no *extrinsic evidence* presented to ALJ Pope shows that unskilled work appropriately addresses these additional limitations, and, finally, the Commissioner's brief cites no *other authoritative sources* supporting that supposition.

Intuitively, one might suppose that unskilled work probably involves less stress.  In an interpretive Ruling, however, the Commissioner cautions against making such broad assumptions.   In SSR 85-15, the Commissioner states unequivocally that "*[a] claimant's condition [due to stress and mental illness] may make performance of an unskilled job as difficult as an objectively more demanding job.*"   The Ruling elucidates that mentally impaired individuals' reactions to demands of work stress are highly individualized, and that in some cases, they have difficulty meeting requirements of even low stress jobs.  And, of special relevance here, the Ruling emphasizes that "*the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job.*"   *Id.*   Accordingly the Ruling directs that (a) ALJs make particularized findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work, and (b) every impairment-related limitation created by an individual's response to demands of work be reflected in the RFC assessment.   *Id.*

---

[13]    The basic demands of unskilled work include abilities (on a sustained basis) to understand, carry out and remember simple instructions; make simple work-related decisions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting.   SSR 96-9, POLICY INTERPRETATION RULING TITLES II AND XVI: DETERMINING CAPABILITY TO DO OTHER WORK –IMPLICATIONS OF A RESIDUAL FUNCTIONAL CAPACITY FOR LESS THAN A FULL RANGE OF SEDENTARY WORK, 1996 WL 374185, at *9 (SSA July 2, 1996).

Finally, interpretive jurisprudence generally rejects the idea that a broad limitation of "unskilled work" suffices as a detailed assessment of the type required by SSR 96-8p, 1996 WL 374184, at *4. Thus, an administrative judge may not avoid conducting such a detailed assessment by merely indicating that the claimant can perform simple, unskilled work. *See, e.g., Thompson v. Astrue*, No. 10–CV–6576 CJS, 2012 WL 2175781, at *13 (W.D.N.Y. May 30, 2012) (when making findings about a claimant's RFC, an ALJ may not avoid conducting such a detailed assessment by merely indicating that the claimant can perform simple, unskilled work); *Sweat v. Astrue*, No. 08–CV–1108 (FJS/VEB), 2011 WL 2532932, at *6 (N.D.N.Y. May 23, 2011) (on remand ALJ admonished to address the consultative examiners' findings that claimant had difficulty dealing with stress during the relevant time period, as ALJ did not explain how he reconciled those findings with his RFC assessment).

For all these reasons, a conclusion that ALJ Pope did not apply correct principles of law when making his RFC determination is warranted. He did not make particularized findings about the nature of Hendrickson's stress, the circumstances that trigger it, and how those factors affect his ability to work. He did not – possibly could not under evidence before him – sufficiently connect the dots between all of Hendrickson's impairments and his RFC finding.

B.    *Substantial Evidence Error at Step Five*

Given a legally-flawed RFC finding, a Step 5 error was sure to follow. ALJ Pope used his RFC as the basis for his hypothetical question to the vocational expert. Thus, his hypothetical question failed to include all of Hendrickson's nonexertional limitations. (T. 58-64). Specifically, ALJ Pope's hypothetical question to the vocational expert did not include limitations related to

Hendrickson's stress or three of the five other moderate impairments listed earlier. (T. 58-64, 373, 389-91).

For expert vocational opinion to constitute substantial evidence, the hypothetical question posed to the vocational expert must include all limitations supported by medical evidence in the record. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir.1983) (The Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence.); *see also Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002) ("A hypothetical question posed to a vocational expert must reflect all of a claimant's impairments. . . . Where there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question . . . , the expert's response is not considered substantial evidence." (internal citations and quotation marks omitted)). The reason for this requirement is that it is important for the vocational expert to understand the full extent of the applicant's disability so that the expert does not declare an applicant capable of undertaking work in the national or local economy that the applicant cannot truly perform.

VE Pagella expressed opinions concerning the extent to which Hendrickson's job base is eroded by nonexertional limitations and also the existence and extent of jobs within the remaining occupational basis that Hendrickson can perform. Because the hypothetical question on which VE Pagella based these opinions failed to account for additional specific impairments that are medically undisputed, his testimony does not constitute

substantial evidence.[14]  ALJ Pope adduced no other evidence that Hendrickson is capable of performing jobs existing in significant numbers in the national economy.   Thus,  his  conclusion  that  Hendrickson  is  not  disabled  lacks substantial evidentiary support.  In this circumstance, reversal and remand are warranted.

## VII.  Recommendation

1.     The Commissioner's decision should be **REVERSED** and the case **REMANDED** pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings including reexamination of:   (a) Hendrickson's difficulties in handling stress, including but not limited to his moderate limitations in the areas  of  ability  to  perform  activities  within  a  schedule,  maintain  regular attendance and be punctual within customary tolerances; ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and ability to respond appropriately to changes in the

---

[14]       The Second Circuit has nor directly addressed the question of whether an ALJ's hypothetical question to a VE must specifically account for limitations in concentration, persistence, and pace.  Other circuits, however, have addressed the issue and answer in the affirmative. *See, e.g., Winschel v. Commissioner of Soc. Sec.*, 631 F.3d 1176, 1180-81 (11th Cir. 2011) (ALJ erred by failing to either "explicitly include[ ]" or "implicitly account for" moderate limitations in maintaining concentration, persistence, and pace in a hypothetical); *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009)(restricting hypothetical to ability to do "simple, routine tasks that do not require constant interactions with coworkers or the general public" does not accurately describe documented limitations in concentration, persistence, or pace); *Bowers v. Astrue*, 271 Fed. App'x 731, 733 (10th Cir. 2008) (hypothetical including limitations for simple, repetitive, and routine work with a low stress level and only brief contact with the public did not account for impairment in concentration and attention); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (hypothetical restriction to simple one or two-step tasks did not account for limitations in concentration); *Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003) (hypothetical about a person with borderline intelligence did not account for deficiencies in concentration); *Newton v. Chater*, 92 F.3d 688, 695 (8th Cir. 1996) (hypothetical limiting claimant to performing only simple tasks did not account for deficiencies in concentration, persistence, or pace).

work setting; and (b) the extent to which Hendrickson's occupational base is eroded by his difficulties handling stress and the moderate limitations listed above.

2.    To guard against necessity for further actions seeking judicial review, the court also should request that, on remand, the Commissioner also reflect on *all* errors asserted in this action as set forth herein at Section IV.

## VIII.   Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the ___10___ day of ___December___ 2012.

Earl S. Hines
United States Magistrate Judge